j

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KONG PENG LEE, | ) Case No.: 1:15-cv-01859-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**INTRODUCTION**

Plaintiff Kong Peng Lee ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in

---

[1]   Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.
[2]   The parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings in this case, including entry of final judgment.  (Docs. 6, 8).

1

the record and is not based upon proper legal standards. Accordingly, the Court recommends the Commissioner's determination be REVERSED AND REMANDED for further proceedings.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed his application for supplemental security income on January 23, 2012. AR 226-34.[3] Plaintiff alleged that he became disabled on July 1, 2011. AR 226. Plaintiff's application was denied initially and on reconsideration. AR 121-25, 127-31. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Sharon Madsen held a hearing on May 6, 2014, and issued an order denying benefits on May 30, 2014. AR 6-18, 29-48. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3, 5. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on May 6, 2014, in Fresno, California. AR 29-48. Plaintiff appeared and was represented by attorney Jonathan Pena. Impartial Vocational Expert ("VE") Judith Najarian also appeared. AR 31.

Plaintiff testified with the assistance of a Hmong interpreter. AR 9, 31. In response to questions from the ALJ, Plaintiff testified that he is married and has five children. He has a driver's license and still drives. He completed the second grade in Laos, and attended some adult school in the United States. He can understand a little bit of English, but cannot converse in it. AR 33-34.

When asked about his daily activities, Plaintiff testified that his wife sometimes will have to help him bathe. It is difficult for him to do regular household chores, but he is able to pick up light things. He can cook or microwave a little bit. His wife does the grocery shopping, and he does not do very much yard work. He hardly goes out because he is depressed. On a typical day, he will sometimes go outside for 10 or 20 minutes, and watches TV from time to time. AR 35-36.

When asked about his medical issues, Plaintiff testified that his gout gives him pain on his extremities, his ankles, knees, elbows, fingers and wrist. The pain is constant, but he will have severe flare-ups three to five times a month. He takes medication, which seems to stop the flare-ups from

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

occurring every day. He also has constant pain in his upper back and shoulders, along with regular headaches every time he gets depressed. His stomach also is constantly in pain, and he has an ulcer. AR 36-38.

When asked about his abilities, Plaintiff testified that he could lift and carry between 10 and 20 pounds, could sit up to 20 minutes and could stand up to 20 minutes. He mainly walks in and out of the house. He can bend over and put on his shoes and can climb a few steps. Plaintiff reported that he uses a cane all the time. A doctor prescribed him crutches, but Plaintiff bought a cane. AR 38-39.

When asked about his depression, Plaintiff testified that he feels like he does not want to live and might have to shed some tears. All of his friends, relatives and siblings are dead and he is alone. His hope was for his children, but they are not behaving and he has no hope for them or for himself. He has no joy. However, Plaintiff confirmed that he told his doctor that he was still around because of his children, but now that they are not behaving well, it makes him sad. His medications do not help. AR 39-40.

In response to questions from his attorney, Plaintiff testified that his flare-ups from gout usually last four to five days. During that time, he cannot do anything and just lies down on the sofa. With his depression, Plaintiff testified that he has crying spells two to three times a month. He also has a hard time falling asleep, and on average sleeps two to three hours each night. With regard to his cane, Plaintiff testified that he uses it for support, and even leans on it while sitting. AR 41-44.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Judith Najarian. In the first hypothetical, the ALJ asked the VE to consider a hypothetical individual with the same age, education and work background as Plaintiff who could lift and carry 50 pounds occasionally, 25 pounds frequently, could sit, stand or walk six to eight hours with frequent stooping, crouching, crawling, climbing, and kneeling, would need to avoid concentrated exposure to heights and was limited to simple, routine tasks. The VE testified that there would be some medium, unskilled jobs available, such as greens tier, poultry hanger, and box bender. AR 44-45.

For the second hypothetical, the ALJ asked the VE to consider an individual who could lift and carry 20 pounds occasionally, 10 frequently, could sit, stand or walk six to eight hours, could do

frequent posturals, was limited to simple, routine tasks and would miss about four days a month. The VE testified that there would be no work available for this individual. AR 45.

For the third hypothetical, Plaintiff's counsel asked the VE to consider an individual limited to sitting about 30 minutes at a time, standing 20 minutes at time, who could sit for about two hours, could stand and walk for about two hours, and could lift no more than ten pounds. The VE testified that this individual could not perform any work. AR 46.

**Medical Record**

The entire medical record was reviewed by the Court. AR 318. The relevant medical evidence is referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 9-18. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 23, 2012, his application date. Further, the ALJ identified gout, depression and post-traumatic stress disorder as severe impairments. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 11-12.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 50 pounds occasionally and 25 pounds frequently, sit, stand, and/or walk 6 to 8 hours in an 8-hour workday, frequently stoop, crouch, crawl, climb and kneel, must avoid concentrated exposure to heights and could perform simple, routine tasks. AR 12-16. Plaintiff did not have any past relevant work, but there were jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 16-18. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from January 23, 2012, the date his application was filed. AR 17.

///

///

///

///

# SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[4]

Plaintiff argues that the ALJ erred by (1) failing to acknowledge or discuss the opinion of Dr. De la Rosa, a non-examining consultant; (2) failing to include Plaintiff's need for a cane in the RFC; and (3) rejecting the opinion of Plaintiff's treating physician, Dr. A. Sharma.

## I. The ALJ Did Not Err in Failing to Discuss the Opinion of Dr. De la Rosa

Plaintiff first argues that the ALJ erred by failing to acknowledge or discuss the February 18, 2011 opinion of Dr. C. De la Rosa, a non-examining state agency physician. (Doc. 15 at 7-8). Specifically, Plaintiff faults the ALJ for assigning great weight to the opinions of the state agency evaluators who found that Plaintiff could perform medium work, but failed to consider Dr. De la Rosa's opinion that Plaintiff could perform only light work, which would have supported a determination that Plaintiff was disabled. (*Id.*). The Commissioner counters that the ALJ did not err, in part, because Dr. De la Rosa's opinion was not issued during the relevant disability period. Instead, Dr. De la Rosa's opinion related to the initial disability determination phase for another application filed December 31, 2010 (AR 52), not the application at issue filed on January 23, 2012 (AR 61-79). (Doc. 23 at 18-19). In reply, Plaintiff concedes that Dr. De la Rosa's opinion was issued in connection with a prior application, but contends that Dr. De la Rosa's opinion is relevant because it was issued after Plaintiff's alleged disability onset of July 1, 2011. (Doc. 24 at 2). Plaintiff also argues that the ALJ erred by essentially failing to identify whether or not the opinion of Dr. De la Rosa was reviewed or ignored. (*Id.* at 2-3).

As admitted by Plaintiff, Dr. De la Rosa rendered an opinion on February 18, 2011, in connection with Plaintiff's prior application for disability dated December 31, 2010. AR 49, 52, 56-59. Plaintiff subsequently filed the current application for SSI on January 23, 2012, alleging disability beginning on July 1, 2011. AR 61, 226-34. The ALJ's decision found that Plaintiff was not disabled as of January 23, 2012, the date of his second application. AR 18.

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

SSI benefits are not payable for any months prior to the filing of an application. 20 C.F.R. § 416.335. Therefore, the relevant time period concerning Plaintiff's disability for the application currently before the Court began on January 23, 2012, the date of the second application. *See* 20 C.F.R. § 416.335. Dr. De La Rosa's opinion rendered almost a year before the filing of the current application is stale and not relevant to Plaintiff's current claim of disability. *See Dotson v. Astrue*, No. 1:10-cv-00234-SKO, 2011 WL 1883468, at *6 (E.D. Cal. May 17, 2011) (finding physician opinion rendered almost a year before filing of second SSI application stale and not-time relevant to current claim of disability). This is especially true given that Plaintiff was evaluated by multiple physicians only a few months after his current application, including a consultative evaluation by Dr. Roger Wagner in April 2012, and a state agency evaluation by Dr. K. Quint in May 2012. AR 73-75, 423-27.

## II. The ALJ Did Not Err in Failing to Include an Assistive Device in the RFC

Plaintiff next argues that the ALJ erred by failing to include Plaintiff's need for a cane in the RFC determination. Plaintiff contends that the ALJ is required to address this work-related limitation because the need for a cane necessarily affects a person's ability to reach, handle and carry, and would erode the occupational base (Doc. 15 at 8, 10-11). As a corollary, Plaintiff asserts that the ALJ failed to discuss Plaintiff's treatment records and the opinion evidence from his treating physician, Dr. Sharma, confirming his use of, and need for, a cane. (*Id.* at 9, 11). The Commissioner counters that substantial evidence supports the ALJ's decision not to include an assistive device in the physical RFC finding. In reply, Plaintiff reasserts his argument that the ALJ failed to address evidence in the treatment record regarding Plaintiff's use of a cane for ambulation. (Doc. 24 at 4-5).

Social Security Ruling ("SSR") 96-9p provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7; *see also Flores v. Colvin*, No. 1:14-cv-02096-SKO, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (discussing SSR 96-9p).

Plaintiff correctly points to notations in the record that he used a cane for ambulation. *See* AR 453 ("[u]sing cane for ambulation"), 508 ("able to ambulate with cane"), 513 ("uses cane for ambulation"), 518 ("uses cane for ambulation"), 528 ("uses cane for ambulation"), 543 ("uses cane for ambulation'). However, there is no indication that a cane was prescribed as medically necessary, and Plaintiff testified that he bought the cane. AR 39.

Further, as argued by the Commissioner, substantial evidence supports the ALJ's determination that Plaintiff did not need a cane for ambulation due to weakness in his knees. AR 16. For instance, the ALJ appropriately noted that recent treatment records indicated Plaintiff walked with a cane, but "yielded few objective findings," and showed no joint swelling, deformity or edema (AR 498, 500, 512, 513, 517, 518, 528), decreased swelling of the right knee and improved swelling of the right ankle (AR 508), and full range of motion of the knees (AR 528). AR 13. Further, x-rays of Plaintiff's right knee were normal. AR 412. Based on the objective evidence, the ALJ reasonably discounted assertions that Plaintiff required a cane. AR 15, 16. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (ALJ's findings will be upheld if supported by inferences reasonably drawn from the record).

Plaintiff also argues that the ALJ should have considered the opinion of her treating physician, Dr. A. Sharma, that Plaintiff must use a cane while standing or walking. (Doc. 15 at 9). According to the record, Dr. Sharma opined in a check-the-box form that Plaintiff must use a cane or other hand-held assistive device for occasional standing/walking due to imbalance and pain. AR 494, 553. However, even if Plaintiff's treating physician concluded that he needed a cane for occasional standing/walking, this conclusion was contradicted by the findings of the consultative examiner, Dr. Roger Wagner. A report based on an independent physical examination can constitute substantial evidence to reject a finding by a treating physician. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (examining physician's opinion 'alone constitutes substantial evidence' to reject treating physician's opinion where it 'rests on his own independent examination'). Dr. Wagner examined Plaintiff on April 29, 2012. During the physical examination, Dr. Wagner noted that Plaintiff ambulated "leaning a bit with the cane *improbably far* out in front of him and bending at the lumbar back to ambulate." AR 424 (emphasis added). Plaintiff did not appear to have pain when asked to stand up and did not

appear to have any significant discomfort when bending over to take off his shoes and socks. AR 425. Plaintiff was able to walk without any obvious antalgia and was stable walking, and "appeared to be able to walk back and forth across the room stably without the cane." AR 425. Plaintiff's joints showed no redness, heat, swelling or effusions. In particular, his knees "showed no swelling, tenderness, effusion, ligamentous laxity or crepitus" and his ankle exams were normal. AR 426. He had 5/5 bilateral lower extremity strength. AR 426. Dr. Wagner did not conclude that Plaintiff required an assistive device. AR 423-27.

Additionally, in evaluating Plaintiff's credibility, the ALJ discounted Plaintiff's statement that he needed cane because his knees were weak based on objective evidence that x-rays of his right knee were negative and that the consultative examiner noted that he walked with a stable gait without his cane. AR 16. Although subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). The ALJ also discounted Plaintiff's credibility because both consultative examiners questioned the veracity of his allegations. As determined by the ALJ, the psychological consultative examiner stated that Plaintiff's allegations regarding his service in Laos lacked plausibility, and the internal medicine consultative examiner questioned whether Plaintiff was exaggerating or magnifying his physical symptoms. AR 16, 419 ("account of traumatic events in Laos is lacking in plausibility"), 425 ("difficult . . . to tell if there was any significant exaggeration in the claimant's symptoms . . . when attempting to get the history was very vague and somewhat evasive"), 427 ("unclear if there may be any magnification of symptoms"). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapetyan* 242 F.3d at 1148 (citation omitted). Plaintiff has not challenged the ALJ's credibility findings.

The Court finds that the ALJ's determination that Plaintiff did not require the use of an assistive device for ambulation is supported by substantial evidence and free of legal error.

### III. The ALJ Erred in Not Discussing Dr. Sharma's Opinion

Plaintiff argues that the ALJ erred by failing to acknowledge, discuss or evaluate the opinions of his treating physician, Dr. Sharma, regarding his work-related limitations. (Doc. 15 at 11). In response, the Commissioner concedes that the ALJ did not discuss Dr. Sharma's Physical Medical Source Statements, but argues that any such error was harmless. (Doc. 23 at 21-22).

#### A. Dr. Sharma's Opinion

On March 17, 2014, and April 28, 2014, Dr. Sharma completed Physical Medical Source Statement forms. AR 492-95, 551-54. On April 28, 2014, Dr. Sharma indicated that Plaintiff was seen every 3-4 months and had diagnoses of gout, depression and headaches. Dr. Sharma opined that Plaintiff could walk one block without rest or severe pain, could sit 30 minutes at a time and stand 20 minutes at time, and could sit about 2 hours in an 8-hour workday and stand/walk about 2 hours in an 8-hour workday. Dr. Sharma further opined that Plaintiff would need to take unscheduled breaks every 20-30 minutes for 30 minutes at a time due to pain/paresthesias, numbness. He also would need to elevate his legs more than 50% of an 8-hour workday and must use a cane for standing/walking due to imbalance and pain. Additionally, Dr. Sharma indicated that Plaintiff could lift less than 10 pounds frequently and 10 pounds occasionally, could occasionally twist, stoop, and crouch/squat, could rarely climb stairs and could never climb landers. Dr. Sharma also opined that Plaintiff's symptoms would likely be severe enough to interfere with attention and concentration 25% or more of a typical workday. AR 551-54.

#### B. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* If the treating doctor's medical opinion is contradicted by another doctor, the

10

Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31.

Regardless of the source, the ALJ is required to evaluate every medical opinion in the record. 20 C.F.R. § 416.927(c). Moreover, in determining a claimant's RFC, the ALJ is required to explain in her decision the weight given to each medical opinion. *Id.* It is error to ignore or neglect a physician's medical opinion without providing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### C. Analysis

As the Commissioner admits, the ALJ did not mention or discuss Dr. Sharma's opinion evidence. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (An ALJ may not "avoid the [ ] requirements" of providing specific and legitimate reasons for rejecting a doctor's opinion "simply by not mentioning the treating physician's opinion."). In this case, the Court finds that the ALJ erred in ignoring Dr. Sharma's opinion regarding Plaintiff's functional limitations, and providing no explanation for rejecting that opinion. This error was not harmless because Dr. Sharma assessed functional limitations greater than those credited by the ALJ.

### IV. Remand is Required

Plaintiff has requested remand, and the circumstances of this case indicate that there are outstanding issues that must be resolved before a final determination can be made. Further administrative review may remedy the ALJ's error and thus remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); s*ee also Garrison*, 759 F.3d at 1021 (court may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand.  Accordingly, the decision is REVERSED and the case REMANDED to the ALJ for further proceedings.  On remand, the ALJ will reweigh the medical evidence and address the deficiencies identified by the Court.  If necessary, the Commissioner may hold further hearings and receive additional evidence.

Accordingly, the Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Kong Peng Lee and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 23, 2017**                    /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE